UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Wesco Distribution, Inc.,

    Plaintiff,

v.                                                                                     Case No. 09-13014

Hartford Fire Insurance Company,                         Honorable Sean F. Cox
Jenkins Construction, Inc., and
Piping Components, Inc.,

    Defendants/Third Party Plaintiffs,

v.

Bayview Electric Company, LLC,

    Third Party Defendant.
_____/

**<u>OPINION & ORDER GRANTING
WESCO DISTRIBUTION, INC.'S MOTION FOR SUMMARY JUDGMENT</u>**

    This action arises out of a construction project and involves: 1) a claim on the payment bond for the project by a supplier who supplied materials to the electric subcontractor but was not paid; 2) a third-party claim by the general contractor and surety against the electric subcontractor who did not pay the material supplier; and 3) counterclaims against the contractor and surety by the electric subcontractor. The matter came before the Court on three motions for summary judgment. The parties have fully briefed the issues and the Court scheduled all three motions to be heard on September 2, 2010.

    At the September 2, 2010 hearing, however, the parties indicated that two motions had been resolved. In the remaining summary judgment motion, Plaintiff Wesco Distribution, Inc.

1

seeks summary judgment in its favor as to its claim for payment under the payment bond in the amount of $118,610.79, along with the attorney fees it has incurred in this action. For the reasons below, the Court shall GRANT Plaintiff's motion.

BACKGROUND

This action arises out of a construction project for the City of Detroit ("the City") called the Bluehill/Freud Pump Station Renovations, Contract No. PC-685 ("the Project").

The Payment Bond:

Defendant Hartford Fire Insurance Company ("Hartford") issued a Payment Bond for the Project (attached as Ex. A to Wesco.'s Am. Compl.). The Payment Bond identifies: 1) Jenkins Construction, Inc. / PCI, a Joint Venture ("Jenkins/PCI") as the contractor for the Project; 2) the City as the owner; and 3) Hartford as the surety. The Payment Bond provides that:

> All rights and remedies on this Payment Bond shall be solely for the protection of all claimants supplying labor and materials to the Contractor or the Contractor's Subcontractors in the prosecution of the Work, and shall be determined in accordance with Michigan law.

(Payment Bond, ¶ A). It also states that "[i]t is the intention of the Contractor, Surety and Owner that the Surety shall be bound by all terms and conditions of the Contract Documents and this Performance Bond . . ." (*Id*. at ¶ D). The Payment Bond further provides that "[t]he prevailing party in a suit on this Payment Bond is entitled to recover as part of that party's judgment reasonable attorneys' fees." (*Id*. at ¶ C).

The Jenkins-Bayview Contract:

Jenkins contracted with Bayview Electric Company ("Bayview") to provide certain labor and materials for the Project. (*See* Jenkins-Bayview Contract).

In a section titled "Cost of Work," the Jenkins-Bayview Contract states that the General Contractor (Jenkins) agrees "[t]o pay the Subcontractor [Bayview] for the performance of the Subcontract Agreement including all applicable taxes, subject to the terms hereof. To include it in its request to the Owner for reimbursement of all work of the Subcontractor incorporated into the Project covered by this Agreement of which invoices have been supplied by the Subcontractor and approved by the General Contractor, and *to pay to the Subcontractor less 10% retention*." (Subcontract Agreement at 2) (emphasis added).

The original amount of the Jenkins-Bayview Contract was $3,800,000. (Jenkins-Bayview Contract at 1). The parties agree that amount was later increased to $4,125,143.47 by written change orders.

Bayview's Contract With Wesco:

Bayview, in turn, contracted with Wesco Distribution, Inc. to provide certain materials and supplies for the Project. Bayview's contract with Wesco provides the following provision regarding payment:

> XIII. PAYMENT
> Parties agree that Buyer shall make payment to Wesco Distribution within 3 days upon receipt from General Contractor-Jenkins Construction Company on the Bluehill & Freud Pumping Station Rehabilitation job. In the event Buyer fails to pay Wesco Distribution, Wesco Distribution retains the rights and remedies to seek payment from the General Contractor & or owner.

(Ex. B to Wesco's Motion for Summ. J.).

Wesco's Claim Against Hartford And Jenkins/PCI:

On July 30, 2009, Plaintiff Wesco Distribution, Inc. ("Wesco") filed this action against Defendants Hartford Fire Insurance Company ("Hartford"); Jenkins Construction, Inc.

3

("Jenkins"); and Piping Components, Inc. ("PCI"). Wesco filed an Amended Complaint on November 4, 2009, which asserts the same one count – "Claim on Payment Bond" (Count I). Wesco alleges that it first furnished materials to the Project in February, 2006, and that it notified Jenkins/PCI by certified mail that it was furnishing materials to the Project. (Wesco's Am. Compl. at ¶ 12; Ex. B to same, Notice of Furnishing of Materials). Wesco alleges that it last furnished materials for the Project on December 28, 2006, and that it notified Jenkins/PCI of such last furnishing on March 28, 2007. (*See* Ex. C to Wesco's Am. Compl., 90-Day Notice of Preservation of Right to Assert Bond Claim). Wesco asserts that it has not been paid in full for the materials provided to the Project and that $235,724.98 remains due and owing. Wesco "asserted a written claim against the Payment Bond by letters dated April 18, 2008 and January 26, 2009 and advised Hartford of its intention to file a lawsuit under the Bond by correspondence dated April 1, 2009. Nevertheless, Hartford failed and refused to tender payment to Plaintiff in connection with its claim under the Bond." (Wesco's Am. Compl. at ¶ 15).

Hartford And Jenkins/PCI's Third-Party Complaint Against Bayview:

After Wesco filed this action, Hartford, Jenkins and PCI filed a third-party complaint against Bayview Electric Company, LLC ("Bayview") (Docket Entry No. 10), alleging that Bayview failed to provide all funds due and owing to Wesco. (Third-Party Compl. at ¶ 13). They assert two counts: "Breach of Contact" (Count I); and "Specific Performance" (Count II). They state that they "brought Bayview into the lawsuit because all sums due Plaintiff [Wesco] have been paid to Bayview." (Docket Entry No. 48 at 4).

Bayview's Counterclaim Against Hartford And Jenkins/PCI:

Bayview's Counterclaim against Jenkins/PCI and Hartford (Docket Entry No. 22) alleges

that Jenkins/PCI failed to pay it in full according to the terms of the parties' contract. It further alleges that Jenkins/PCI breached other duties under the contract, including delaying its performance and changing the scope of work without providing additional compensation. Its Counterclaim contains four counts: "Breach of Contract" (Count I); "Breach of Implied Contract" (Count II); "Negligence" (Count III); and "Action on Payment Bond" (Count IV).

Summary Judgment Motions Filed By The Parties:

Under this Court's Scheduling Order, all motions were to be filed by July 14, 2010. (*See* Docket Entry Nos. 34 and 47). Following discovery, the parties filed the following three summary judgment motions:

> Wesco's Motion for Summary Judgment (Docket Entry No. 62): wherein Wesco seeks summary judgment in its favor as to its claim for payment under the Payment Bond in the amount of $118,610.79,[1] along with the attorney fees it has incurred in this action.
>
> Hartford And Jenkins/PCI's Motion for Partial Summary Judgment Against Bayview (Docket Entry No. 48): wherein they seek partial summary judgment as to several aspects of Bayview's breach of contract counterclaim.
>
> Bayview's Motion for Partial Summary Judgment (Docket Entry No. 60): wherein it seeks partial summary judgment on several aspects of its breach of contract counterclaim against Jenkins/PCI and Hartford.

This Court scheduled all of the above motions for hearing on September 2, 2010. At the September 2, 2010 hearing, however, counsel for Hartford and Jenkins/PCI and Counsel for Bayview advised the Court that they had settled their respective claims against each other and therefore wished to withdraw their motions (Docket Entry No. 48 and Docket Entry No. 60).

---

[1]Although Wesco's complaint originally sought approximately $280,000, during this action a payment was made to Wesco, thereby reducing the amount requested by Wesco to $118,610.79

5

Thus, the Court only heard oral argument on Wesco's Motion for Summary Judgment. At the September 2, 2010 motion hearing, Hartford and Jenkins/PCI continued to oppose Wesco's Motion for Summary Judgment on the same grounds as were contained in their response brief.

At the September 2, 2010 hearing, counsel also advised the Court that on September 1, 2010 – the day before the scheduled motion hearing – Jenkins had provided Bayview with a check for $118,610.00, made payable to both Bayview and Wesco. (*See* Docket Entry No. 78-2). Counsel for Hartford and Jenkins/PCI stated that the check was issued in an attempt to end this litigation. Counsel for Wesco explained that although Bayview endorsed the check and delivered it to Wesco's Counsel at approximately 4:40 p.m. on September 1, 2010, the check was not cashed by Wesco because Wesco is not willing to settle its claims in this case unless it is paid the full[2] amount owed to it along with the attorney fees it has incurred in this action.

At the September 2, 2010 hearing, this Court advised the parties that it was going to order supplemental briefing so that the parties could provide authority for their respective positions on the issue of whether Wesco can make a claim on the Payment Bond even though Jenkins/JCI fully paid Bayview for Wesco's materials.[3]

On September 8, 2010, this Court issued the order for supplemental briefing. (Docket Entry No. 76). In that Order, this Court also ordered Wesco to specify "the amount of attorney fees that Wesco seeks in this action," and attach appropriate support for any amount requested.

---

[2]The check was for $118,610.00 rather than $118,610.79.

[3]Before the Court had issued that order, however, Wesco filed a supplemental brief. (Docket Entry No. 74). The Court will not consider this brief.

6

(*Id.*). The Order further provided that Hartford and Jenkins/JCI may file a brief responding to Wesco's brief specifying its attorneys fees, within seven days after the filing of that brief.

On September 15, 2010, Wesco filed a supplemental brief in compliance with this Court's Order. (Docket Entry No. 79). Wesco specified that it is seeking $65,527.62 in attorney fees and costs that it incurred in this action.

On September 15, 2010, Hartford and Jenkins/PCI filed two separate supplemental briefs. (Docket Entry Nos. 77 & 78).

On October 1, 2010, Wesco filed a "Motion for Authorization to Accept Payment Without Prejudice to Pending Litigation." (Docket Entry No. 82). Hartford and Jenkins/PCI filed a response in opposition to this motion on October 8, 2010. (Docket Entry No. 84).

Although this Court's Order expressly provided that they could do so (*see* Docket Entry No. 76)("Defendants may file a brief of no more than two (2) pages, responding to Wesco's supplemental brief on attorney fees, within seven days after that brief is filed."), to date, Hartford and Jenkins/PCI have not filed a brief responding to Wesco's request for attorney fees.

ANALYSIS

A.  Wesco Is Entitled To Recover $118,670.79 Under The Payment Bond.

On July 14, 2010, Wesco filed its Motion for Summary Judgment (Docket Entry No. 62) wherein it asserts that it is entitled to summary judgment with respect to its claim for payment under the Payment Bond.

"Because materialmen and contractors may not obtain a mechanics' lien on a public building, the Legislature requires the posting of performance and payment bonds by a general contractor before construction on a public building may commence." *Kammer Asphalt Paving*

*Co. v. East China Twp Schools*, 443 Mich. 176, 181-82 (1993); M.C.L. § 129.201 *et seq.* The payment bonds required by statute are "solely for the protection of claimants . . . supplying labor or materials to the principal contractor or his subcontractors in the prosecution of the work provided for in the contract." *Kammer Asphalt Paving Co.*, 443 Mich. at 182; M.C.L. § 129.03.

As of the conclusion of the briefing on the parties' respective summary judgment motions, it was undisputed that: 1) Wesco first furnished materials to the Project on or about February 6, 2006 (Ex. O to Wesco's Motion at 4); 2) Wesco last furnished materials to the Project on or about December 28, 2006 (*Id.*); 3) Wesco complied with the various notice requirements in the statute; and 4) Bayview has been fully paid by Jenkins/PCI for Wesco's work (*see* Affidavit of David Warren, stating that "All payments for WESCO'S work have been paid to Bayview."). Nevertheless, Wesco was still owed $118,610.79 for the materials it provided.

In its motion, Wesco contends that it is entitled to judgment in its favor in the amount of $118,610.79, along with the attorney fees it has incurred in this action. The Court agrees.

In response to Wesco's Motion for Summary Judgment, and at the September 2, 2010 hearing, Hartford and Jenkins/PCI asserted that summary judgment should be denied because the money Wesco seeks is not "justly due" it for two reasons.

    1.    <u>Retainage Allowed By Contract:</u>

First, they argued that Bayview is properly holding a 10% retainage on the amount it owes Wesco. (*See, e.g.* Hartford and Jenkins/JCI's Response Brief at 11) (Asserting that Wesco "never advises the court that it entered into a contract which allows for retainage and that Bayview is holding retainage pursuant to the contract between the parties."). Hartford and

Jenkins/PCI also submitted to the Court (but apparently did not file) "Defendants/Third Party Plaintiffs Counter Statement of Disputed Facts" wherein they asserted that "Bayview's contract with Wesco allows for retention. [Exhibit #1, hereto]." No exhibit, however, was attached to that submission.

At the September 2, 2010 hearing, Counsel for Hartford and Jenkins/PCI was asked to identify the alleged retention provision in the contract between Wesco and Bayview. In response to this Court's inquiry, Counsel for Hartford and Jenkins/PCI admitted that Bayview's contract with Wesco does not, in fact, have a retention provision. (9/2/10 Hrg. Tr.).

Moreover, Hartford and Jenkins/PCI have not submitted any authority to indicate that a retainage provision in one of its contracts can somehow be imputed to a supplier who did not agree to a retainage provision in its contract with a subcontractor. Rather, in their supplemental brief, Hartford and Jenkins/PCI suggest that M.C.L. § 125.1563 somehow authorizes Bayview to hold retention from Wesco. (*See* Docket Entry No. 78 at 2). As Hartford and Jenkins/PCI themselves previously recognized, however, that "statute governs the *retention by a municipality*. It does not" govern or authorize retention by the general contractor or subcontractors. (Docket Entry No. 68 at 8) (emphasis added).

Accordingly, the Court rejects Hartford and Jenkins/PCI's argument that payment is not "justly due" to Wesco because Bayview is properly holding retention from Wesco.

2. No Default By Jenkins/JCI:

Second, Hartford and Jenkins/JCI assert – in response to Wesco's Motion for Summary Judgment, at the September 2, 2010 hearing, and in their supplemental briefs – that Wesco cannot make a claim on the Payment Bond if Jenkins/JCI fully paid Bayview for Wesco's

9

materials, even if Bayview failed to pay Wesco. Hartford and Jenkins/JCI's brief did not cite any authority that supports this assertion.[4]

Wesco contends that regardless of whether Bayview was fully paid by Jenkins/JCI, it is entitled to payment under the bond. It asserts that the statute protects materialmen such as it "whenever they have not been paid any amount which is 'justly due' more than 90 days past last furnishing, <u>regardless</u> of the reason for such non-payment." (Wesco's Reply Br. at 3).

Following the September 2, 2010 hearing, this Court ordered supplemental briefing so that the parties could provide authority for their respective positions on this issue (i.e., whether Wesco can make a claim on the Payment Bond even though Jenkins/JCI fully paid Bayview for Wesco's materials). The parties have since filed supplemental briefs on the issue.

Having considered those supplemental briefs, and the authority provided by the parties, the Court agrees with Wesco that, under Michigan law, it may recover under the payment bond even if Jenkins/PCI fully paid Bayview for Wesco's materials. *Pi-Con, Inc. v. A.J. Anderson Constr. Co.*, 435 Mich. 375, 383-84 (1990); *Joba Construction Co., Inc. v. V&Y Construction Services, Inc*., WL 3078190 (Mich.App. 2005).

Under the statute, a claimant who has furnished labor or material, and who has not been paid in full therefor before the expiration of a period of 90 days after the day on which the last of the labor was done or performed by him or her, or material was furnished by him or her, may sue on the payment bond for the amount or balance remaining unpaid. The statute, by its terms, does

---

[4]Rather, their briefs contains convoluted arguments regarding pay-when-pay provisions that do not have any application here because: 1) there is not a pay-when-pay provision in the contract between Wesco and Bayview and 2) it is undisputed that Bayview has been fully paid by Jenkins/JCI for the materials provided by Wesco in any event.

10

not prohibit claims by a subcontractor if the party it directly contracted with has been paid by the general contractor. Moreover, the Act is "remedial in nature" and is to be liberally construed to protect contractors and materialmen in the public sector "in order to ensure that they do not suffer injury when other contractors default on their obligations." 20 MICH.CIV. JUR. *Public Contracts* § 76; *W.T. Andrew Co., Inc. v. Mid-State Corp.*, 450 Mich. 655, 659 (1996).

Wesco may recover under the payment bond even if Jenkins/PCI fully paid Bayview for Wesco's materials. The authority cited by Wesco establishes that Michigan's Public Bond Act does not insulate a general contractor from having to pay more than once for labor and/or materials when a subcontractor defaults on its obligations to pay downstream contractors. The notice requirements of the Act, however, which it is undisputed that Wesco fully complied with, were included in the Act to allow a contractor to avoid such a result:

> The purpose behind the thirty-day notice required by M.C.L. § 129.207; M.S.A. § 5.2321(7) is to provide principal contractors with detailed notice of a subcontractor's involvement on a project before, if not soon after, the commencement of that involvement. *Such notice is necessary to ensure principal contractors knowledge regarding any possible claims to which their bonds might later be subjected and to assure that principal contractors are not prejudiced by having to pay out of a bond for labor or materials performed by third parties after already paying their subcontractors for that same labor or materials.* So long as the principal contractors receive notice, the intent of the Legislature is fully complied with.

*Pi-Con, Inc. v. A.J. Anderson Constr. Co.*, 435 Mich. 375, 383-84 (1990) (emphasis added).

*Joba Construction Co., Inc.* further supports Wesco's position that payment made by Jenkins/PCI to its subcontractor (Bayview) does not foreclose Wesco from making a claim under the payment bond. *Joba Construction Co., Inc. v. V&Y Construction Services, Inc.*, WL 3078190 (Mich.App. 2005). In that case, the State of Michigan entered into a contract with a

11

general contractor, Flora Construction, Inc. ("Flora"). Pursuant to Michigan's Public Bond Act, Flora obtained a payment bond with a surety. Flora entered into a subcontract with V&Y Construction Services, Inc. ("V&Y"), which in turn contracted with the plaintiff, Joba Construction, Inc. ("Joba") to perform work on the project.

A dispute over payment arose between V&Y and Joba and Joba sent Flora a letter indicating that it had not been paid by V&Y. That letter "included a request that Flora issue a check made payable jointly to plaintiff and V&Y. " After Joba and V&Y later agreed on the amount that was owed by V&Y to Joba, however, Joba "sent Flora a second letter withdrawing its request for a joint check." When V&Y failed to pay Joba, Joba filed suit against the general contractor and its surety seeking payment under the payment bond.

The general contractor and its surety noted that it had issued a check to V&Y for the work performed by Joba and asserted that Joba "should not be permitted to collect that amount a second time from defendants." *Id*. at *4. The Michigan Court of Appeals rejected defendants' argument that Joba waived its right to pursue payment under the payment bond by withdrawing its request for a joint check. The Court further ruled that defendants' "estoppel argument lacks merit because it was unreasonable for Flora to believe that, by issuing a check only to V&Y, any obligations under the payment bond would cease." *Id.* at *5. Thus, although Flora had paid V&Y for the work performed by Joba, Joba nevertheless recovered under the payment bond when V&Y did not pay Joba.

The same result is warranted here.

It is undisputed that Wesco last furnished materials to the Project on or about December 28, 2006 and that it fully complied with the various notice requirements in the statute.

12

Nevertheless, as of July 30, 2009 (the date when Wesco filed this action), Wesco was still owed approximately $280,000 for its work on the project. It is undisputed that as of the date it filed its Motion for Summary Judgment, Wesco was still owed $118,610.79 for its work on the project. Although Jenkins/PCI had paid Bayview for Wesco's work on the project, Bayview did not pay Wesco and thus Wesco can recover under the payment bond. Wesco is therefore entitled to payment of $118,610.79 under the payment bond.[5]

B.  Under The Express Terms Of The Payment Bond, Wesco Is Entitled To Recover, As Part Of Its Judgment, The Reasonable Attorney Fees It Incurred In This Action.

The Payment Bond expressly provides that "[t]he prevailing party in a suit on this Payment Bond is entitled to recover as part of that party's judgment reasonable attorneys' fees." (*Id*. at ¶ C). As set forth above, Wesco is entitled to recover $118,670.79 under the Payment Bond. Thus, as a prevailing party in a suit on the Payment Bond, Wesco is entitled to recover, as part of its judgment, the reasonable attorney fees it incurred in this action.

In compliance with this Court's September 8, 2010 Order, Wesco filed a supplemental brief wherein it specified the amount of attorney fees it seeks in this action, along with supporting documentation. Wesco seeks an award of attorney fees of $60,021.00 and costs of

---

[5]The Court rejects Hartford and Jenkins/PCI's argument that the Court should deny Wesco's Motion for Summary Judgment because on September 1, 2010 – more than 3 years after Wesco last furnished labor and materials for the project and more than a year after Wesco filed this action to recover payment for same – Wesco was presented a check for $118,610.00 by Bayview in an attempt to settle this action. Wesco's Motion for Summary Judgment, which had already been filed and fully briefed before September 1, 2010, sought payment of $118,610.79 and the attorney fees that Wesco has incurred in this action. Wesco is not obligated to settle the case by accepting a partial payment, or waive its right to recover the rather substantial attorney fees it has incurred in this litigation, and Wesco has made it quite clear that it does not wish to do so.

$2,506.62.

1.   Attorney Fees:

The primary concern in evaluating a request for attorney fees is that the fee awarded be reasonable. *Paschall v. Flagstar Bank, FSB*, 297 F.3d 431, 434 (6th Cir. 2002). In determining a reasonable attorney fee award, the court generally calculates the "lodestar amount by multiplying the reasonable number of hours billed by a reasonable billing rate." *Id.*

Here, Wesco seeks a total of $60,021.00. That amount consists of 52.5 hours worked in 2009, at an hourly rate of $265.00 per hour, and 156.3 hours worked in 2010, at an hourly rate of $295.00 per hour. (*See* Affidavit in Support of Plaintiff's Request for Award of Attorney's Fees and Costs, attached as Ex. G to Docket Entry No. 79). Along with that Affidavit, Counsel for Wesco submitted detailed billing records for this action, consisting of 26 pages of descriptive billing entries for the hours worked on this case. (*Id.*).

Although this Court's Order expressly provided that they could do so (*see* Docket Entry No. 76) (Defendants may file a brief "responding to Wesco's supplemental brief on attorney fees, within seven days after that brief is filed."), to date, Hartford and Jenkins/PCI have not filed a brief responding to Wesco's request for attorney fees. Thus, Hartford and Jenkins/PCI have not challenged either the reasonableness of the hours worked or the requested hourly rates.

Nevertheless, this Court has carefully reviewed both the billing records and Counsel's affidavit. The Court concludes that billing records and affidavit adequately support the hours claimed. This is especially so given the complexity of this case and the competing, and often times changing, positions taken by the parties during the course of this litigation.

Accordingly, the Court shall award Wesco $60,021.00 for the attorney fees it incurred in

this action.

  2.  Costs:

Wesco also asks the Court to award it $2,506.62 in costs that it incurred in this action. The costs requested include photocopying and mailing expenses and charges for legal research. (*See* Docket Entry No. 79-7).

The Payment Bond provides that a prevailing party is entitled to recover "reasonable attorneys' fees." It does not reference costs. Accordingly, the Court does not believe it would be appropriate for it to award costs under the Payment Bond.[6]

## CONCLUSION & ORDER

For the reasons that follow, IT IS ORDERED that Wesco's Motion for Summary Judgment is GRANTED. Wesco is entitled to $118,670.79 under the Payment Bond and, as a prevailing party in a suit on the Payment Bond, Wesco is also entitled to recover, as part of its judgment, $60,021.00 for the reasonable attorney fees it incurred in this action.

Wesco is directed to submit a proposed Judgment for entry by the Court within fourteen (14) days of the date of this Opinion & Order.

IT IS FURTHER ORDERED that Wesco's Motion for Authorization to Accept Payment Without Prejudice to Pending Litigation (Docket Entry No. 82) is DENIED AS MOOT.

IT IS SO ORDERED.

---

[6]After Judgment is entered, Wesco may file a Bill of Costs with the Clerk of the Court. *See* FED. R. CIV. P. 54(d); *see also* Bill of Costs Handbook available on the District Court's Internet website www.mied.uscourts.gov.

                                        S/Sean F. Cox
                                        Sean F. Cox
                                        United States District Judge

Dated: October 25, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 25, 2010, by electronic and/or ordinary mail.

                                        S/Jennifer Hernandez
                                        Case Manager